No. 22-2067

No. 22-2169

United States Court of Appeals for the Eighth Circuit

---

Janice Hargrove Warren, Plaintiff – Appellee/Cross-Appellant

v.

Mike Kemp, in his official capacity as a Member of the Board of the
Pulaski County Special School District and in his individual capacity,
et al., Defendants – Appellants/Cross-Appellees

---

Appeal from the United States District Court
Eastern District of Arkansas

District Court Case Number 4:19-cv-00655-BSM

The Honorable Brian Stacy Miller
United States District Judge

---

The Appellee/Cross-Appellant's Amended Brief

---

Terrence Cain
Ark. Sup. Ct. Reg. No. 99128
Attorney at Law
208 Brown Street
Little Rock, Arkansas 72205-5841
Telephone 501.664.7512
Email terrencecain@windstream.net

## Summary of the Case

Janice Warren sued the Pulaski County Special School District and its board of directors for race discrimination, sex discrimination, retaliation, and breach of contract. After a seven day trial, a jury returned a verdict in her favor on her retaliation claim and awarded her $208,025.40 in lost wages and benefits, $125,000 in other damages, and punitive damages of $25,000 each against two board members. Following the verdict, Janice Warren asked the district court to award her additional back pay, award her front pay and award her other equitable relief. The court denied her requests. This is an appeal of the retaliation award, including punitive damages, and a cross appeal of the district court's denial of Janice Warren's request for additional back pay and her requests for front pay and other equitable relief.

## Statement Regarding Oral Argument

The facts and arguments of this case can be adequately presented in the briefs and in the record. If, however, the Court determines that oral argument would aid its decision making process, Janice Warren requests fifteen minutes of argument.

i

# Table of Contents

Summary of the Case ............................................................. i

Statement Regarding Oral Argument ................................. i

Table of Authorities .......................................................... iv

Jurisdictional Statement .................................................... 1

Statement of the Issues ..................................................... 4

Statement of the Case ....................................................... 5

Summary of the Argument ............................................... 20

Argument ......................................................................... 22

    1. Dr. Warren engaged in protected activity when she reported PCSSD's violation of Judge Marshall's order and of Plan 2000's equal facilities mandate, and the district retaliated against her for doing so, therefore, this Court should deny PCSSD's motion for judgment as a matter of law and affirm the jury's retaliation verdict ................................................................... 22

Standard of Review ......................................................... 22

    2. School board members who engage in blatant discrimination can be subjected to punitive damages in their individual capacities, therefore, this Court should deny PCSSD's motion for judgment as a matter of law and affirm the jury's punitive damages verdict ....................................................... 36

    3. Because PCSSD failed to carry its burden of proof on its mitigation of damages defense, the district court committed reversible error when it denied her request for increased back pay,

Appellate Case: 22-2067    Page: 3    Date Filed: 01/12/2023 Entry ID: 5235279

front pay, or first instatement relief, therefore, this Court should grant Dr. Warren the relief the district court erroneously failed to grant her ............................................................................... 41

Conclusion ....................................................................................... 46

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements ................................. 48

Certificate of Service ...................................................................... 50

Appellate Case: 22-2067     Page: 4     Date Filed: 01/12/2023 Entry ID: 5235279

# Table of Authorities

## Cases

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)........... 4, 42, 45, 46

*Alexander v. Rija*, 208 F.3d 419 (3d Cir. 2000) ...................................37

*Amateur Elec. Supply, Inc.*, 42 F.3d 1037 (7th Cir. 1994) .................. 45

*Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800 (8th Cir. 2017) ........ 20, 23

*Bayes v. Biomet, Inc.*, 55 F.4th 643 (8th Cir. 2022)...............................
.......................................................................20, 21, 23, 24, 32, 33, 35

*Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875 (8th Cir. 2015) ........
........................................................................................................ 23

*EEOC v. Sw. Bell Tel., L.P.*, 550 F.3d 704 (8th Cir. 2008)................ 23

*Evans v. Kansas City Sch. Dist.*, 65 F.3d 98 (8th Cir. 1995) ..................
............................................................................................ 25, 26, 27

*Gaddy v. Abex Corp.*, 884 F.2d 312 (7th Cir. 1989)..................... 42, 45

*Hishon v. King & Spaulding*, 467 U.S. 69 (1984)...............................31

*Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037 (7th Cir. 1994) .
.......................................................................................... 42, 45, 46

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999) ........................... 36

*Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773 (D. Del. 2000) ..............................................................................................37

iv

*Love v. RE/MAX of Am., Inc.*, 738 F.2d 383 (10th Cir. 1984) ........... 28

*Mitchell v. Visser*, 529 F. Supp. 1034 (D. Kan. 1981) ........................ 28

*Monteiro v. Poole Silver Co.*, 615 F.2d 4 (1st Cir. 1980) .................... 28

*Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981).. ......................................................................................................... 28

*Patterson v. UPMC S. Hills Health Sys. Home Health, L.P.*, No. 03–89 (W.D. Pa. May 15, 2015).................................................................... 30

*Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981) ....................................................................................... 28

*Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179 (7th Cir.1982) ......... 28

*Ryan Data Exch., LTD v. Graco, Inc.*, 913 F.3d 726 (8th Cir. 2019) ...... ........................................................................... 20, 21, 24, 32, 33, 35

*Sanders v. Lee Cnty. Sch. Dist. No.1*, 669 F.3d 888 (8th Cir. 2012)........ ........................................................................... 4, 30, 36, 37, 41, 46

*Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978)... ......................................................................................................... 28

*Sisco v. J.S. Alberici Constr. Co.*, 655 F.2d 146 (8th Cir. 1981) .............. .................................................................................................4, 28, 46

*United States v. Spears*, 454 F.3d 830 (8th Cir. 2006) ................21, 24

*Washington v. Denney*, 900 F.3d 549 (8th Cir. 2018)............................ ........................................................................... 20, 21, 24, 32, 33, 35

Appellate Case: 22-2067    Page: 6    Date Filed: 01/12/2023 Entry ID: 5235279

*Williams v. Cloverdale Farms Dairy, Inc.*, 78 F. Supp. 2d 479 (D. Md. 1999) ................................................................31

*Yates v. Hagerstown Lodge No. 212 Loyal Order of Moose*, 878 F. Supp. 788 (D. Md. 1995) ...............................................31

## Statutes

28 U.S.C. § 1291...............................................................3

28 U.S.C. § 1331 ..............................................................2

28 U.S.C. § 1367(a)...........................................................2

42 U.S.C. § 1981........................................... 1, 2, 18, 30, 31

42 U.S.C. § 1981a(b)(1) ................................................... 36

42 U.S.C. § 1983 ...................................................... 1, 2, 18

42 U.S.C. § 2000e-2(a)(1) ............................................1, 2

42 U.S.C. § 2000e-2(a)(2) ............................................1, 2

42 U.S.C. § 2000e-3(a)...................................................1, 2

## Rules

8th Cir. R. 28A(h)(1) ..................................................... 48

8th Cir. R. 28A(h)(2)...................................................... 48

8th Cir. R. 28A(h)(3)...................................................... 48

Fed. R. App. P. 25(d)(1)(B) ........................................... 50

Fed. R. App. P. 25(d)(2) ................................................. 50

Appellate Case: 22-2067    Page: 7    Date Filed: 01/12/2023 Entry ID: 5235279

Fed. R. App. P. 32(a)(5)(A) ............................................................. 48

Fed. R. App. P. 32(a)(6) ................................................................. 48

Fed. R. App. P. 32(a)(7)(B)(i) ........................................................ 48

Fed. R. App. P. 32(f) ..................................................................... 48

vii

Appellate Case: 22-2067   Page: 8   Date Filed: 01/12/2023 Entry ID: 5235279

## Jurisdictional Statement

On September 23, 2019,[1] Janice Warren ("Dr. Warren") sued the Pulaski County Special School District ("PCSSD") and its board of directors for race discrimination, sex discrimination, retaliation, and breach of contract in the United States District Court for the Eastern District of Arkansas.

She sued PCSSD for race discrimination and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 2000e-2(a)(2). She sued PCSSD for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). She sued PCSSD for race discrimination and retaliation under 42 U.S.C. § 1981 via 42 U.S.C. § 1983, and she sued PCSSD for breach of contract under Arkansas state law. Finally, she sued the seven members of PCSSD's board of directors in their individual capacities under 42 U.S.C. § 1983 for race discrimination and retaliation in violation of 42 U.S.C. § 1981.

---

[1] Dr. Warren filed amended complaints on August 20, 2020 and October 18, 2020. (R. Doc. 31; R. Doc. 65).

Appellate Case: 22-2067    Page: 9    Date Filed: 01/12/2023 Entry ID: 5235279

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the cause of action arose under the laws of the United States, specifically, 42 U.S.C. § 2000e-2(a)(1), 42 U.S.C. § 2000e-2(a)(2), 42 U.S.C. § 2000e-3(a), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. The district court had subject matter jurisdiction over the breach of contract claim under 28 U.S.C. § 1367(a) because the same facts that gave rise to the federal law claims gave rise to the state law claim.

A jury heard the case over seven days between February 14, 2022 and February 25, 2022, and on February 25, 2022, returned a verdict in Dr. Warren's favor on her retaliation claim. The jury awarded her $208,025.40 in lost wages and benefits, $125,000 in other damages, and punitive damages of $25,000 each against two board members. On March 10, 2022, the district court entered a judgment reflecting the jury's verdict.

On March 21, 2022, Dr. Warren filed a motion asking the district court to award her additional back pay, award her front pay, and award her other equitable relief. On March 22, 2022, PCSSD filed a motion for judgment as a matter of law. On April 21, 2022, the district court

2

entered an order denying PCSSD's motion for judgment as a matter of law and denying Dr. Warren's motion for additional back pay, front pay, and other equitable relief. On May 20, 2022, PCSSD filed a timely notice of appeal, and on June 2, 2022, Dr. Warren filed a timely notice of cross-appeal.

This Court has jurisdiction under 28 U.S.C. § 1291, which vests United States circuit courts with jurisdiction to hear appeals from final decisions of United States district courts. This appeal is from a final judgment that disposes of all of PCSSD's and Dr. Warren's claims.

Appellate Case: 22-2067     Page: 11     Date Filed: 01/12/2023 Entry ID: 5235279

## Statement of the Issues

Dr. Warren engaged in protected activity when she reported PCSSD's violation of Judge Marshall's order and of Plan 2000's equal facilities mandate, and the district retaliated against her for doing so, therefore, this Court should deny PCSSD's motion for judgment as a matter of law and affirm the jury's retaliation verdict. *Sisco v. J.S. Alberici Constr. Co.*, 655 F.2d 146, 149-151 (8th Cir. 1981).

School board members who engage in blatant discrimination can be subjected to punitive damages in their individual capacities, therefore, this Court should deny PCSSD's motion for judgment as a matter of law and affirm the jury's punitive damages verdict. *Sanders v. Lee Cnty. Sch. Dist. No.1*, 669 F.3d 888, 894-895 (8th Cir. 2012).

Because PCSSD failed to carry its burden of proof on its mitigation of damages defense, the district court committed reversible error when it denied her request for increased back pay, front pay, or first instatement relief, therefore, this Court should grant Dr. Warren the relief the district court erroneously failed to grant her. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).

4

## Statement of the Case

After earning a bachelor's degree, a master's degree, and doctorate of education, Dr. Warren served as a classroom teacher for eleven years. (Appellee Cross-Appellant App. 10; R. Doc. 180, at 6). She then moved into an administrative role, supervising elementary education and equity in the Crossett School District. (Appellee Cross-Appellant App. 10; R. Doc. 180, at 6). In 2001, Dr. Warren became superintendent of the Crossett School District. (Appellee Cross-Appellant App. 10; R. Doc. 180, at 6).

When she assumed the helm of the Crossett School District, the district was in financial trouble because of declining student enrollment. (Appellee Cross-Appellant App. 10-11; R. Doc. 180, at 6-7). Eventually, the Arkansas Department of Education took control of the district after deeming it in fiscal distress. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7). Two years later, the Arkansas Department of Education returned the district to local control and applauded the district for its efforts that resulted in it being returned to local control sooner than expected. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7). When Dr. Warren started her service as superintendent of the Crossett School

District, it had what is known in Arkansas education circles as a "legal balance" of a bit more than $1 million. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7). When she left the district in 2011, it had a legal balance of $5.1 million. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7).

In 2011, the Arkansas Department of Education declared PCSSD in fiscal distress and took over the operation of the district. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7). The Commissioner of the Arkansas Department of Education named Jerry Guess ("Dr. Guess") as superintendent. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7). At the time, Dr. Warren worked for the Arkansas Department of Education as a curriculum auditor. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7). Dr. Guess asked her to join PCSSD, she agreed, and in July 2012, she became PCSSD's director of elementary education. (Appellee Cross-Appellant App. 11; R. Doc. 180, at 7).

After one year of service, and at Dr. Guess's behest, Dr. Warren took on the job of interim assistant superintendent for equity and pupil services, which meant she worked two full-time jobs, but received pay for only one of them. (Appellee Cross-Appellant App. 11; R. Doc. 180,

6

at 7; Trial Tr., vol. 5, at 1030-1032). Since 1982, PCSSD has been a defendant in a school desegregation case the Little Rock School District filed against it, the North Little Rock School District, and the State of Arkansas. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8). That case, which is still ongoing, is styled *Little Rock School District v. Pulaski County Special School District*, Case Number 4:28-cv-866-DPM, United States District Court for the Eastern District of Arkansas. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8). United States District Judge D. Price Marshall ("Judge Marshall") currently presides over the case. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8).

In 1999, PCSSD entered into a court supervised consent decree called Plan 2000. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8). One of the parties in the desegregation case and a signatory to Plan 2000 is the McClendon Intervenors, who were known in an earlier iteration of the case as the Joshua Intervenors. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8). John Winfred Walker Sr. ("Mr. Walker") represented the Joshua Intervenors and the McClendon Intervenors until his death on October 28, 2019. (Appellee Cross-

7

Appellant App. 12; R. Doc. 180, at 8).[2] Plan 2000 obligated PCSSD to undertake specific duties with respect to staffing, special education, monitoring, student assignments, student discipline, and facilities, and if it did so to the satisfaction of the court overseeing the desegregation case, it would be declared unitary in those areas of its operations. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8). Plan 2000 also called for the parties to meet monthly and appear for quarterly status hearings before the court. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8).

On March 10, 2016, the Arkansas Department of Education returned PCSSD to local control, and in November 2016, seven persons won election to the newly constituted school board. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8). Linda Remele ("Dr. Remele") served as president of the board. (Appellee Cross-Appellant App. 12; R. Doc. 180, at 8). During a time period when the Arkansas Department of Education controlled PCSSD, the district, through Dr. Guess, and

---

[2] Austin Porter Jr., who represented Dr. Warren in the district court, and is one of her attorneys of record in this case, has served as the lead attorney for the McClendon Intervenors since Mr. Walker's death.

Appellate Case: 22-2067   Page: 16   Date Filed: 01/12/2023 Entry ID: 5235279

the parties to the desegregation case agreed to two school construction projects, Robinson, which is located in a predominately white part of the district, and Mills, which is located in a predominately black part of the district. (Appellee Cross-Appellant App. 12-13; R. Doc. 180, at 8-9; Trial Tr., vol. 2, at 110-112; Trial Tr., vol. 3, at 507-515, 527). Judge Marshall ordered that the Mills project be completed before the Robinson project, and Plan 2000 mandates that the Mills and Robinson facilities be equal. (Appellee Cross-Appellant App. 12-13; R. Doc. 180, at 8-9).

Dr. Guess appointed Derek Scott ("Mr. Scott"), who was the district's executive director of operations, to oversee the Mills and Robinson projects. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9). Mr. Scott systematically undermined the Mills project in a number of ways. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9; Trial Tr. vol. 2, at 267-271; Trial Tr. vol. 3, at 541-542, 545, 547, 557-562, 570-571, 574). He directed the architects and construction team to reduce the square footage of the Mills project and to use lesser quality, less expensive materials. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9; Trial Tr. vol. 2, at 267-271; Trial Tr. vol. 3, at 541-542, 545, 547,

9

557-562, 570-571, 574). He diverted funds from the Mills project to the Robinson project. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9; Trial Tr. vol. 2, at 267-271; Trial Tr. vol. 3, at 541-542, 545, 547, 557-562, 570-571, 574). He made monthly reports to the PCSSD board about the status of both projects and falsely informed the board that both projects were on time and on budget. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9; Trial Tr. vol. 2, at 267-271; Trial Tr. vol. 3, at 541-542, 545, 547, 557-562, 570-571, 574).

In May 2017, board member Alicia Gillen ("Ms. Gillen") obtained a copy of correspondence from Mr. Walker to then PCSSD attorney Allen Roberts ("Mr. Roberts") agreeing to a joint stipulation that the district would be deemed unitary with respect to staffing in exchange for certain adjustments to Plan 2000 in other areas so long as those adjustments were consistent with the goals of Plan 2000. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9). In that correspondence, Dr. Guess committed to recommending to the board that Dr. Warren be named deputy superintendent of the district. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9). When he

10

ultimately made that recommendation, the board rejected it. (Appellee Cross-Appellant App. 13; R. Doc. 180, at 9).

On July 18, 2017, the board called an emergency meeting and terminated the services of Mr. Roberts. (Appellee Cross-Appellant App. 13-14; R. Doc. 180, at 9-10). Dr. Guess objected to the board's decision and told the board that he was committed to working with Mr. Roberts and if he was no longer PCSSD's lawyer, he would resign. (Appellee Cross-Appellant App. 13-14; R. Doc. 180, at 9-10). The board accepted Dr. Guess's resignation and hired Dr. Warren as interim superintendent of PCSSD. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10).

On July 19, 2017, Dr. Warren met with Dr. Guess and Mr. Scott, and during that meeting, Mr. Scott recommended that the superintendent's office be painted. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10). Dr. Warren asked about funding, and Mr. Scott assured her that there was adequate funding in the district's sustainability, renovation, and modernization budget to paint the office. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1045-1046).

11

Dr. Warren and her assistant then spent the next five days cleaning the superintendent's office, which had dead roaches and dead rodents in it. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1045-1046). Moreover, the desk Dr. Guess used was propped up on bricks, and the sofa he used was from a Goodwill store, so Dr. Warren ordered a replacement desk, a credenza, and some chairs. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1045-1046).

The board held a meeting in August 2017 and commended Dr. Warren on the job she was doing. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10). On August 28, 2017, a parent whose child participated in athletics at Mills High School called Dr. Warren in an irate state after having learned of the gross disparities in the facilities at Mills compared to the facilities at Robinson. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1052). Dr. Warren then asked someone from the district's information technology department to go to both schools and obtain video footage of them. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1052).

Appellate Case: 22-2067    Page: 20    Date Filed: 01/12/2023 Entry ID: 5235279

After viewing the footage and seeing the gross and obvious disparities in the two facilities, Dr. Warren called every member of the PCSSD board as well as Sam Jones ("Mr. Jones"), the district's lawyer, and told them about the disparities and how the current status of the projects violated Judge Marshall's order and Plan 2000. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1054). She asked every board member to view the video footage for himself or herself, and six of the seven did. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1054).

Dr. Remele was the first board member to do so, and she asked Dr. Warren to not allow her fellow board members to view the video until she saw the Mills and Robinson projects for herself. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1054-1056). Dr. Warren did not comply with this request because she had already invited every member of the board to do just what Dr. Remele had done, i.e., view the video. (Appellee Cross-Appellant App. 14; R. Doc. 180, at 10; Trial Tr., vol. 5, at 1054-1056).

After Mr. Jones viewed the video, he determined that he needed to update Judge Marshall because two weeks before, he filed a status

Appellate Case: 22-2067   Page: 21   Date Filed: 01/12/2023 Entry ID: 5235279

report with Judge Marshall that said the Mills and Robinson projects were compliant with the court's orders and Plan 2000. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 5, at 1055-1056). On September 5, 2017, Mr. Jones filed a report with Judge Marshall that conceded that there were gross and obvious disparities in the Mills and Robinson projects and that those disparities violated his order and Plan 2000. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 5, at 1055-1056). Judge Marshall conducted a hearing on September 8, 2017, and then directed Margie Powell ("Ms. Powell"), the former director of the Office of Desegregation Monitoring and a court appointed expert, to investigate the Mills and Robinson projects and report her findings to the court. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 2, at 214, 218-219, 221). Her investigation revealed what everyone was coming to learn, i.e., the disparities between Mills and Robinson were gross, obvious, and a violation of the court's order and Plan 2000. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 2, at 214, 218-219, 221).

The *Arkansas Democrat Gazette*, a newspaper with statewide circulation in Arkansas, published an article about the disparities in the

Appellate Case: 22-2067   Page: 22   Date Filed: 01/12/2023 Entry ID: 5235279

two projects and the district's failure to comply with the equal facilities mandate of Plan 2000. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 5, at 1059-1061). The publication upset Dr. Remele because she thought it made the district look bad. (Trial Tr., vol. 3, at 625-626, 639-632). She and Ms. Gillen were likewise upset because they did not like the language in Mr. Jones's September 5, 2017 report to Judge Marshall about the disparities between Mills and Robinson. (Trial Tr., vol. 3, at 627).

On September 12, 2017, the board conducted a meeting, at which Dr. Remele and Ms. Gillen chastised Dr. Warren for Mr. Jones's September 5, 2017 filing that notified Judge Marshall about the Mills and Robinson disparities. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 5, at 1063). Dr. Remele scolded Dr. Warren, telling her, "we do not air our dirty laundry in public." (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 3, at 625-626, 648-649; Trial Tr., vol. 4, at 754-755; Trial Tr., vol. 5, at 1059-1061).

Dr. Remele and Ms. Gillen then berated Dr. Warren for what they described as remodeling the superintendent's office, which they deemed something only a permanent superintendent should do and that

15

her job was just to "keep the ship afloat." (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 5, at 1063). At that same September 12, 2017 meeting, the board decided to conduct a national search for a permanent superintendent. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 5, at 1064-1069).

Following that meeting, Dr. Remele began compiling a written list of issues she had with Dr. Warren's performance as interim superintendent. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11; Trial Tr., vol. 3, at 649-652). On November 14, 2017, the board announced it was hiring a national search firm to find PCSSD's next superintendent, and in December 2017, it hired Ray & Associates to conduct the search. (Appellee Cross-Appellant App. 15; R. Doc. 180, at 11). Thirty-six persons applied for the job, and Ray & Associates narrowed that cohort to ten, nine of whom it presented to the PCSSD board on March 27, 2018. (Appellee Cross-Appellant App. 15-16; R. Doc. 180, at 11-12). Dr. Warren was among this group of nine. (Appellee Cross-Appellant App. 16; R. Doc. 180, at 12).

Ray & Associates had the nine candidates prepare a three to four minute video presentation where they were asked to answer three

16

subjective questions. (Appellee Cross-Appellant App. 16; R. Doc. 180, at 12; Trial Tr., vol. 5, at 1158-1165). The board reviewed the nine video presentations and selected three persons as the finalists: Charles McNulty, a white male; James Harris, a black male; and Erick Pruitt, a black male. (Appellee Cross-Appellant App. 16; R. Doc. 65, at 17; R. Doc. 180, at 12). The board selected the final three based on a "matrix" Ray & Associates provided to board members, but no one knows how Dr. Warren scored compared with the three finalists because the board did not preserve the documents, and with the board's blessing, Ray & Associates destroyed them. (Appellee Cross-Appellant Ap. 16; R. Doc. 180, at 12; Trial Tr. vol. 3, at 661; Trial Tr. vol. 4, at 757-760; Trial Tr. vol. 5, at 1165-1166, 1186).

The board scheduled interviews for the three finalists for April 2018, but one day before his interview, James Harris withdrew because he lacked the state required qualifications to serve as a superintendent of a public school district in Arkansas. (Appellee Cross-Appellant Ap. 16; R. Doc. 180, at 12; Trial Tr. vol. 5, at 1170). Erick Pruitt lacked experience in a school district central office and had served as an area superintendent for only eighteen months. (Appellee Cross-Appellant

Appellate Case: 22-2067    Page: 25    Date Filed: 01/12/2023 Entry ID: 5235279

Ap. 16; R. Doc. 180, at 12). Ultimately, the board chose Charles McNulty to serve as permanent superintendent effective July 1, 2018 at a then annual salary of $205,000 plus an annual $10,000 annuity. (Appellee Cross-Appellant App. 16-17; R. Doc. 180, at 12-13; Trial Tr., vol. 2, at 299-300).

On September 23, 2019, Dr. Warren sued PCSSD and its board of directors under Title VII of the Civil Rights Act of 1964 for race discrimination, sex discrimination, retaliation, and she sued PCSSD and its board for breach of contract under Arkansas contract law. (R. Doc. 1; R. Doc. 31; R. Doc. 65). She sued the seven members of PCSSD's board of directors in their individual capacities under 42 U.S.C. § 1983 for race discrimination and retaliation in violation of 42 U.S.C. § 1981. (R. Doc. 1; R. Doc. 31; R. Doc. 65).

A jury heard the case over seven days between February 14, 2022 and February 25, 2022, and on February 25, 2022, returned a verdict in Dr. Warren's favor on her retaliation claim and rejected her other claims. (Appellants Cross-Appellees Addendum 19-28, 31; R. Doc. 171; R. Doc. 176). The jury awarded her $208,025.40 in lost wages and benefits, $125,000 in other damages, punitive damages of $25,000

18

against Dr. Remele, and punitive damages of $25,000 against Ms. Gillen. (Appellants Cross-Appellees Addendum 19-28, 31; R. Doc. 171; R. Doc. 176). On March 10, 2022, the district court entered a judgment reflecting the jury's verdict. (Appellants Cross-Appellees Addendum 31; R. Doc. 176).

On March 21, 2022, Dr. Warren filed a motion asking the district court to award her additional back pay, award her front pay, and award her other equitable relief. (Appellee Cross-Appellant App. 1-36; R. Doc. 179; R. Doc. 180. R. Doc. 180-1). On March 22, 2022, PCSSD filed a motion for judgment as a matter of law. (Appellants Cross-Appellees Addendum 32-33; R. Doc. 181). On April 21, 2022, the district court entered an order denying PCSSD's motion for judgment as a matter of law and denying Dr. Warren's motion for additional back pay, front pay, and other equitable relief. (Appellants Cross-Appellees Addendum 34-40; R. Doc. 191).

On May 20, 2022, PCSSD filed a timely notice of appeal, and on June 2, 2022, Dr. Warren filed a timely notice of cross-appeal. (Appellants Cross-Appellees Addendum 41; R. Doc. 203; Appellee Cross-Appellant App. 38; R. Doc. 208).

## Summary of the Argument

When a party asks this Court to review a post-verdict motion for judgment as a matter of law, "…[this Court's] analysis reflects [its] 'hesitancy to interfere with a jury verdict.'" *Bayes v. Biomet, Inc.*, 55 F.4th 643, 648 (8th Cir. 2022) (quoting *Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017)). When this Court is presented with a post-verdict motion for judgment as a matter of law, it considers the evidence in the light most favorable to the prevailing party; it assumes that the jury resolved all conflicts in the evidence in favor of the prevailing party; it assumes as proved all facts that the prevailing party's evidence tended to prove; and it gives the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. *Bayes*, 55 F.4th at 648 (quoting *Ryan Data Exch., LTD v. Graco, Inc.*, 913 F.3d 726, 732-733 (8th Cir. 2019) (quoting *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018))).

After doing the foregoing, this Court must deny a post-verdict motion for judgment as a matter of law "…if reasonable persons could differ as to the conclusions to be drawn from the evidence." *Bayes*, 55 F.4th at 648 (quoting *Ryan Data Exch., LTD*, 913 F.3d at 732-733

20

(quoting *Washington v. Denney*, 900 F.3d 549, 558-559 (8th Cir. 2018)). And when this Court reviews a renewed motion for a judgment as a matter of law, which is what PCSSD is asking it do, "…[this Court] must resolve credibility issues in favor of the verdict." *Bayes v. Biomet, Inc.*, 55 F.4th 643, 649 (8th Cir. 2022) (quoting *United States v. Spears*, 454 F.3d 830, 832 (8th Cir. 2006)).

A duly constituted jury representing a fair cross section of the community sat through a seven day jury trial and reached the conclusion that PCSSD, Dr. Remele, and Ms. Gillen blatantly retaliated against Dr. Warren because she fulfilled her moral and legal duty as the superintendent of PCSSD to report its racially discriminatory facilities practices. PCSSD wants to try that case anew before this Court. This Court should decline PCSSD's invitation to substitute its judgment for the jury's in this case, and it should affirm the district court's order denying its post-verdict motion for judgment as a matter of law.

## Argument

**1. Dr. Warren engaged in protected activity when she reported PCSSD's violation of Judge Marshall's order and of Plan 2000's equal facilities mandate, and the district retaliated against her for doing so.**

After a seven day trial, the jury returned a verdict in Dr. Warren's favor after finding that PCSSD did not interview her or hire her for the permanent superintendent's position in retaliation for her reporting the district's violation of Judge Marshall's order and of Plan 2000's equal facilities mandate when it allowed obvious and gross disparities between Mills and Robinson. (Appellants Cross-Appellees Addendum 19-28, 31; R. Doc. 171; R. Doc. 176; Trial Tr., vol. 7, at 1327).

PCSSD asserts that this Court should vacate the jury's verdict because Dr. Warren's reporting of its violation of Judge Marshall's order and of Plan 2000's equal facilities mandate is not protected activity within the meaning of Title VII of the Civil Rights Act of 1964 or 42 U.S.C. § 1981. PCSSD is wrong, and Dr. Warren will demonstrate why, but first she needs to state the proper standard of review for this case.

**Standard of Review.**

PCSSD wants this Court to reverse and vacate a jury verdict that comes after the district court denied its motion for summary judgment[3] and after the district court denied its post-verdict motion for judgment as a matter of law. (R. Doc. 90; R. Doc. 191). This Court's standard of review in cases where a party has lost a motion for summary judgment, lost a jury trial on the merits, and lost a post-verdict motion for judgment as a matter of law is exacting, and PCSSD understates that standard in its brief. *Bayes v. Biomet, Inc.*, 55 F.4th 643, 648 (8th Cir. 2022) (quoting *Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017)).

When a party asks this Court to review a post-verdict motion for judgment as a matter of law, "…[this Court's] analysis reflects [its] 'hesitancy to interfere with a jury verdict.'" *Bayes*, 55 F.4th at 648 (quoting *Bavlsik*, 870 F.3d 800 at 805). When a district court is presented with a post-verdict motion for judgment as a matter of law, it considers the evidence in the light most favorable to the prevailing

---

[3] This Court does not review the denial of a motion for summary judgment after a trial on the merits. *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 882 (8th Cir. 2015) (citing *EEOC v. Sw. Bell Tel., L.P.*, 550 F.3d 704, 708 (8th Cir. 2008)).

Appellate Case: 22-2067     Page: 31     Date Filed: 01/12/2023 Entry ID: 5235279

party; it assumes that the jury resolved all conflicts in the evidence in favor of the prevailing party; it assumes as proved all facts that the prevailing party's evidence tended to prove; and it gives the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. *Bayes v. Biomet, Inc.*, 55 F.4th 643, 648 (8th Cir. 2022) (quoting *Ryan Data Exch., LTD v. Graco, Inc.*, 913 F.3d 726, 732-733 (8th Cir. 2019) (quoting *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018))).

After a district court has done the foregoing, which is precisely what the district court did in this case, the court must deny the post-verdict motion for judgment as a matter of law "…if reasonable persons could differ as to the conclusions to be drawn from the evidence." *Bayes*, 55 F.4th at 648 (quoting *Ryan Data Exch., LTD*, 913 F.3d at 732-733 (quoting *Washington*, 900 F.3d at 558-559)). And when this Court reviews a renewed motion for a judgment as a matter of law, which is what PCSSD is asking it do, "…[this Court] must resolve credibility issues in favor of the verdict." *Bayes*, 55 F.4th at 649 (quoting *United States v. Spears*, 454 F.3d 830, 832 (8th Cir. 2006)). Now on to PCSSD's argument that Dr. Warren did not engage in protected activity within

Appellate Case: 22-2067    Page: 32    Date Filed: 01/12/2023 Entry ID: 5235279

the meaning of Title VII or 42 U.S.C. § 1981 when she reported the violations of Judge Marshall's order and of Plan 2000's equal facilities mandate when the district allowed racially discriminatory disparities between Mills and Robinson.

PCSSD stakes quite a bit on *Evans v. Kansas City School District*, a case where this Court held that a teacher did not engage in protected activity within the meaning of Title VII or 42 U.S.C. § 1981 when he complained about a principal's non-compliance with a school desegregation directive. 65 F.3d 98, 100-102 (8th Cir. 1995). *Evans* does not do the work that PCSSD thinks it does and is distinguishable from this case.

Unlike the teacher in *Evans*, when Dr. Warren reported her findings about the disparities between Mills and Robinson, she was the superintendent of the district – albeit on an interim basis – and as such, she had a duty to ensure that the district fully complied with its constitutional duty to desegregate every aspect of its operations where it had not been declared unitary, including facilities. PCSSD has been adjudicated a constitutional violator of the rights of the black students it serves, particularly with respect to the inferior facilities to which it

25

relegates those students, and in order to free itself from federal court supervision, the district voluntarily entered into Plan 2000 and promised to eliminate racial discrimination in its facilities root and branch. Any person occupying the position of superintendent of PCSSD has an affirmative duty to make sure that the district fully complies with the mandate to equalize the facilities that serve its black students with the facilities that serve its white students, and when Dr. Warren reported the Mills and Robinson disparities, she did so in accordance with this duty.

It is true that part of what motivated her to report those disparities was her concern for the students at Mills who were adversely affected by inferior facilities, and it is also true that she was partly motivated by her concern for the administrators, teachers, staff, and others who had to work in those inferior facilities. But those concerns do not diminish in the slightest that her reporting those disparities was a core duty she had as the superintendent of the district to ensure its compliance with its constitutionally required desegregation obligations.

The teacher in *Evans* did not have a duty to ensure that his district complied with its desegregation duties because he was not the person

Appellate Case: 22-2067   Page: 34   Date Filed: 01/12/2023 Entry ID: 5235279

charged with ensuring his district's compliance. Dr. Warren, on the other hand, did have such a duty, which puts her on an entirely different footing than the teacher in *Evans*. Had Dr. Warren not reported the disparities between Mills and Robinson, she would have been derelict in her duty as superintendent, and she would have been complicit in violating the constitutional rights of persons adversely affected by those racially discriminatory disparities, and it was clearly a term and condition of her employment as superintendent to avoid that complicity.

Avoiding that complicity is a core duty of a superintendent of a school district that has been adjudicated, and still is, a constitutional violator of the rights of the students it consigns to inferior facilities, and retaliating against her for avoiding participating in a constitutional violation constitutes punishing her for doing her job, which is a textbook case of an employment practice. Thus, her report was both about an employment practice and about her concern for the students who attend Mills and the teachers, administrators, staff, and others who work there. If, however, Dr. Warren was mistaken in her belief that reporting the racially discriminatory differences between Mills and Robinson was not

27

a report about an unlawful employment practice, that does not doom her retaliation claim. *Sisco v. J.S. Alberici Constr. Co.*, 655 F.2d 146, 149-151 (8th Cir. 1981).

Opposing a practice that is not in fact unlawful can still be opposition activity within the meaning of Title VII and 42 U.S.C. § 1981 so long as the person opposing the practice has a good faith belief that the practice is unlawful, and every federal circuit court, including this one, that has considered the issue has concluded that opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated. *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) (citing *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir.1982); *Sisco v. J.S. Alberici Constr. Co.*, 655 F.2d 146, 150 (8th Cir.1981); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-1140 (5th Cir. 1981); *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981); *Monteiro v. Poole Silver Co.*, 615 F.2d 4, 8 (1st Cir. 1980); *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978); *Mitchell v. Visser*, 529 F. Supp. 1034, 1043 (D. Kan. 1981)).

PCSSD says Dr. Warren's belief was not a good faith belief because she learned in November 2016 that Mr. Walker complained

Appellate Case: 22-2067   Page: 36   Date Filed: 01/12/2023 Entry ID: 5235279

about the inferiority of Mills compared with district schools located in predominately white areas of the district, and that she waited more than nine months later to find out for herself. This argument is spurious for at least two reasons.

One, when Mr. Walker lodged his November 2016 complaints, Dr. Warren was not the superintendent of PCSSD, Dr. Guess was, and he testified during the trial that that "…buck stop[ped] with him[,]" which means it was his responsibility, not Dr. Warren's, to see if Mr. Walker had a point. (Trial Tr., vol. 2, at 154-155, 221). Two, when Mr. Walker lodged those complaints, Whitney Moore, the district's attorney at that time, disputed his claims and told him if he was not satisfied with the facilities issue, he would have to litigate it in court. (Trial Tr., vol. 4, at 931-939). Obviously, neither of these facts do anything to call into question Dr. Warren's good faith belief that when the "buck stopped with her," she had to report those disparities, and she did just that when she replaced Dr. Guess.

Next, PCSSD claims Dr. Warren did not suffer an adverse employment action when it did not select her as one of the three finalists for interviews because she resumed her previous position after the

29

district hired Charles McNulty. PCSSD is wrong again. An adverse employment action can occur within the meaning of Title VII and § 1981 even if the action does not result in a monetary loss. *Sanders v. Lee Cty. Sch. Dist. No. 1*, 669 F.3d 888, 893-894 (8th Cir. 2012) (finding that changing a person's job title from "finance coordinator" to "food services assistant" was an adverse employment action even though the person did not suffer a diminution in pay or benefits, only a change in job duties); *Patterson v. UPMC S. Hills Health Sys. Home Health, L.P.*, No. 03–89, at *6-9 (W.D. Pa. May 15, 2015) (a plaintiff can establish a prima facie case under § 1981 without demonstrating a change in pay, benefits, job responsibilities, or job status because job assignments based on race are adverse employment actions because such assignments affect the terms and conditions of employment).

Dr. Warren had a statutory right to be considered for the permanent superintendent job free from Dr. Remele's and Ms. Gillen's desire to retaliate against her for exposing the district's racially discriminatory facilities practices, and the fact that she returned to a job she held before serving as interim superintendent does nothing to purge the taint of a selection process infected by the retaliatory motives of Dr.

30

Remele and Ms. Gillen. Title VII and 42 U.S.C. § 1981 grant a person a right to considered for employment on a non-discriminatory basis, and when a person is subjected to a retaliatory selection process, she has suffered an adverse employment action within the meaning of Title VII and 42 U.S.C. § 1981. *Hishon v. King & Spaulding*, 467 U.S. 69, 75 (1984) (a benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract to not provide the benefit at all); *Williams v. Cloverdale Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 485-486 (D. Md. 1999) (quoting *Yates v. Hagerstown Lodge No. 212 Loyal Order of Moose*, 878 F. Supp. 788, 796 (D. Md. 1995)) ("Section 1981 violations need not be extended or unmitigated to qualify the plaintiff for damages. Although the length or nature of the violation may affect the plaintiff's award, the fact that an act of contractual discrimination was short or de minimis does not make it any less a violation. Indeed, civil rights are founded not on a relativist calculus of discriminatory behavior but on the principle that deprivations of rights resulting from racial animus are unlawful.").

Appellate Case: 22-2067     Page: 39     Date Filed: 01/12/2023 Entry ID: 5235279

PCSSD next spends seven pages of its opening brief rehashing the arguments it made in its motion for summary judgment and in its post-verdict motion for judgment as a matter of law. (Appellant Cross-Appellee Br. at 40-47). The district court denied PCSSD's motion for summary judgment, and it denied its post-verdict motion for judgment as a matter of law. (R. Doc. 90; R. Doc. 191).

It is not this Court's role to second guess the jury's verdict by substituting its judgment for the jury's, nor is it this Court's role to review this case as if it were trying it in the first instance. Instead, it must consider the evidence in the light most favorable to Dr. Warren; it must assume that the jury resolved all conflicts in the evidence in favor of Dr. Warren; it must assume as proved all facts that Dr. Warren's evidence tended to prove; and give Dr. Warren the benefit of all favorable inferences that may reasonably be drawn from the facts proved. *Bayes v. Biomet, Inc.*, 55 F.4th 643, 648 (8th Cir. 2022) (quoting *Ryan Data Exch., LTD v. Graco, Inc.*, 913 F.3d 726, 732-733 (8th Cir. 2019) (quoting *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018))).

And like the district court, this Court must affirm the denial of PCSSD's post-verdict motion for judgment as a matter of law "…if

32

reasonable persons could differ as to the conclusions to be drawn from the evidence." *Bayes v. Biomet, Inc.*, 55 F.4th 643, 648 (8th Cir. 2022) (quoting *Ryan Data Exch., LTD v. Graco, Inc.*, 913 F.3d 726, 732-733 (8th Cir. 2019) (quoting *Washington v. Denney*, 900 F.3d 549, 558-559 (8th Cir. 2018))).

PCSSD says Dr. Warren did not show a causal link between her reporting the district's racially discriminatory facilities practices and the district's refusal to interview her as a finalist for the superintendent job or offer it to her; it articulated legitimate non-discriminatory reasons for its decision to exclude her as a finalist for the superintendent job or offer it to her; and she did not prove its asserted reasons were pretextual. (Appellant Cross-Appellee Br. at 40-47). If all of this sounds like a motion for summary judgment, a post-verdict for judgment as a matter of law, or both, it does because that is precisely what it is, and this Court should affirm the district court's denial of both. (R. Doc. 90; R. Doc. 191).

Dr. Warren's evidence established the following: (1) on July 18, 2017, Dr. Remele considered Dr. Warren "well qualified" to be the superintendent of PCSSD. (Trial Tr., vol. 3, at 646-649); (2) on August

33

28, 2017, Dr. Warren notified Mr. Jones of the disparities between Mills and Robinson. (Trial Tr., vol. 5, at 1052); (3) on September 5, 2017, Mr. Jones filed a report with Judge Marshall notifying him of the disparities between Mills and Robinson. Trial Tr., vol. 5, at 1055-1056); (4) on September 8, 2017, Judge Marshall conducted a hearing. (Trial Tr., vol. 2, at 214, 218-219, 221); (5) the *Arkansas Democrat Gazette* published an article about the disparities between Mills and Robison and the district's failure to comply with the equal facilities mandate of Plan 2000. (Trial Tr., vol. 5, at 1059-1061); (6) the publication upset Dr. Remele because she thought it made the district look bad. (Trial Tr., vol. 3, at 625-626, 639-632); (7) Dr. Remele and Ms. Gillen were upset because they did not like the language in Mr. Jones's September 5, 2017 report to Judge Marshall about the disparities between Mills and Robinson. (Trial Tr., vol. 3, at 627); (8) on September 12, 2017, Dr. Remele no longer considered Dr. Warren "well qualified" to be the superintendent of PCSSD. (Trial Tr., vol. 3, at 649-650); (9) on September 12, 2017, Dr. Remele scolded Dr. Warren and told her "we do not air our dirty laundry." (Trial Tr., vol. 3, at 650); (10) on September 12, 2017, Dr. Remele began compiling a written list of issues

34

she had with Dr. Warren's performance as interim superintendent. (Trial Tr., vol. 3, at 649-652); (11) on September 12, 2017, the board decided to conduct a national search for a permanent superintendent. (Trial Tr., vol. 5, at 1064-1069).

The jury heard this evidence and drew the reasonable conclusion that Dr. Warren's report to Mr. Jones about the Mills and Robinson disparities set off a retaliatory chain of events that resulted in Dr. Remele and Ms. Gillen depriving her of a non-discriminatory opportunity to become the permanent superintendent of PCSSD. Whether this Court agrees with the jury's determination is not the point or the correct legal standard; so long as a reasonable juror could have decided this case the way this jury did, this Court has to affirm the district court's denial of PCSSD's post-verdict motion for judgment as a matter of law. *Bayes v. Biomet, Inc.*, 55 F.4th 643, 648 (8th Cir. 2022) (quoting *Ryan Data Exch., LTD v. Graco, Inc.*, 913 F.3d 726, 732-733 (8th Cir. 2019) (quoting *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018))). This jury's verdict is unassailably reasonable, and this Court, consistent with its precedents, should not disturb it. *Bayes*, 55 F.4th at

35

648 (quoting *Ryan Data Exch., LTD*, 913 F.3d at 732-733 (quoting *Washington*, 900 F.3d at 558)).

### 2. School board members who engage in blatant discrimination can be subjected to punitive damages in their individual capacities.

In *Sanders v. Lee County School District No. 1*, this Court held that punitive damages can be awarded against individual school board members who engage in blatant discrimination in violation of Title VII. 669 F.3d 888, 894-895 (8th Cir. 2012). In *Sanders*, a jury awarded the plaintiff $8,000 in punitive damages against individual board members in a Title VII race discrimination and constructive discharge case. 669 F.3d at 890. *Sanders* recognized that a plaintiff is entitled to punitive damages if she proves that board members engaged in discrimination with malice or with reckless indifference to her federally protected rights. 669 F.3d at 894-895 (citing 42 U.S.C. § 1981a(b)(1)).

To demonstrate malice or reckless indifference, the plaintiff has to show that the board members knew they might be acting in violation of federal law. *Sanders*, 669 F.3d at 895 (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).

Appellate Case: 22-2067    Page: 44    Date Filed: 01/12/2023 Entry ID: 5235279

*Sanders* held that it is common knowledge that race discrimination violates federal law, and evidence of blatant race discrimination is sufficient to prove knowledge that such discrimination violates federal law, unless the defendant affirmatively proves ignorance. 669 F.3d at 895 (citing *Alexander v. Rija*, 208 F.3d 419, 432 (3d Cir. 2000); *Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773, 784 (D. Del. 2000) (citing *Alexander*, 208 F.3d at 432)).

*Sanders* reviewed the evidence in the case and agreed that there was strong evidence in the record that the defendant board members discriminated against the plaintiff on the basis of race, however, this Court vacated the punitive damages award and remanded the case to allow the plaintiff an opportunity to prove her claim for punitive damages subject to the board members' right to assert the affirmative defense of ignorance of federal law. 669 F.3d 888, 895 (8th Cir. 2012).

In this case, there is strong evidence in the record that Dr. Remele and Ms. Gillen retaliated against Dr. Warren on the basis of race and for reporting the district's racially discriminatory facilities practices. First, Dr. Remele and Ms. Gillen had actual knowledge that the district on whose board they served had been adjudicated a constitutional violator

Appellate Case: 22-2067     Page: 45     Date Filed: 01/12/2023 Entry ID: 5235279

of the rights of its black students by consigning them to inferior facilities. And they knew the district had not been declared unitary with respect to facilities. This knowledge should have given both of them an acute awareness of the need to be vigilant in avoiding any conduct that could be reasonably deemed racially discriminatory, including in its hiring practices. Second, Dr. Remele and Ms. Gillen knew Dr. Warren was a black female. Third, Dr. Remele and Ms. Gillen spearheaded an effort to smear Dr. Warren by constructing a list of her alleged deficiencies, which they started compiling immediately after Dr. Warren reported the racially discriminatory facilities disparities. (Trial Tr., vol. 3, at 649-652; Trial Tr., vol. 4, at 914-916, 950-951, 952-958, 973).

At this point, a reader of this brief will be quite familiar with the evidentiary timeline the trial revealed with respect to Dr. Remele's retaliatory actions, so Dr. Warren will not repeat them here. (Trial Tr., vol. 3, at 625-267, 639-642, 646-652). It is, however, necessary to take a look at Ms. Gillen's so-called list of issues she had with Dr. Warren.

She accused Dr. Warren of lying to the board about district funds, but admitted during the trial she had no evidence to support her

accusation. (Trial Tr., vol. 4, at 914). She further admitted that after she leveled the accusation, she did nothing to determine if it was actually true, which shows knowing falsity or a reckless disregard for falsity. (Trial Tr., vol. 4, at 916). She blamed Dr. Warren for the disparities between Mills and Robinson at a time when she was not the superintendent, but Dr. Guess was, and when pressed on whether Dr. Guess or Dr. Warren was responsible, she had to admit that Dr. Guess was. (Trial Tr., vol. 4, at 927-928).

She faulted Dr. Warren for not providing her with copies monitoring reports, yet she never informed Dr. Warren that she wanted copies of the reports. (Trial Tr., vol. 4, at 948). She blamed Dr. Warren for not providing her with copies of documents the district's lawyers filed in court when Dr. Guess was superintendent, but again, when pressed, had to admit that Dr. Guess was the person she should have looked to for those copies. (Trial Tr., vol. 4, at 949-950).

She falsely accused Dr. Warren of usurping a subordinate's alleged authority to recommend a termination, but was forced to admit that only the superintendent has the authority to recommend a termination, and that authority resided in Dr. Warren at the time Ms.

Gillen leveled this particular accusation. (Trial Tr., vol. 4, at 950). When pressed on cross-examination why she so recklessly accused Dr. Warren of something so demonstrably false, she responded that she had no idea that her list would end up as evidence in a trial. (Trial Tr., vol. 4, at 950-951).

Ms. Gillen blamed Dr. Warren for the district continuing to employ a person who sued the district in 2007, which was more than a decade before Dr. Warren became interim superintendent. (Trial Tr., vol. 4, at 952-955). And finally, she accused Dr. Warren of abusing her power when she recommended terminating Denise Palmer, who was the chief financial officer of the district, for making a false report to the board, yet when Charles McNulty took over as superintendent, he made the identical recommendation, and Ms. Gillen did not utter a word of protest. (Trial Tr., vol. 4, at 955-958).

The jury quite rightly saw Ms. Gillen's so-called list as part and parcel of a post-hoc smear campaign that she and Dr. Remele undertook to retaliate against Dr. Warren for in their view, making the district look bad in the press and before Judge Marshall. (Trial Tr., vol. 3, at 625-626, 639-632). And they intentionally undertook this smear campaign against

40

a black female working for a district that had already been adjudicated a constitutional violator of the rights of black students.

Dr. Remele prided herself on her expertise as an educator and an education administrator because she spent more than three decades working in various capacities for PCSSD, thus she of all people, should have been conversant in federal anti-discrimination law. (Trial Tr., vol. 3, at 586-587, 611). At bottom, there is strong evidence in the record of this case that Dr. Remele and Ms. Gillen retaliated against Dr. Warren and discriminated against her on the basis of race, and because neither of them asserted or proved ignorance of federal anti-discrimination law, they jury properly assessed punitive damages against them. *Sanders v. Lee Cnty. Sch. Dist. No. 1*, 669 F.3d 888, 894-895 (8th Cir. 2012).

**3. The district court should have increased Dr. Warren's back pay and awarded her front pay or alternative equitable relief because PCSSD failed to introduce any evidence that Dr. Warren unreasonably failed to mitigate her damages.**

On March 21, 2022, Dr. Warren filed a motion asking the district court increase her back pay, award her front pay, or order PCSSD to hire her as its superintendent the next time the job opens. (Appellee Cross-Appellant App. 1-36; R. Doc. No. 179; R. Doc. No. 180; R. Doc. No.

180-1). On April 21, 2022, the district court denied Dr. Warren's motion, finding that she was not entitled to additional back pay, front pay, or first instatement relief because she did not mitigate her damages by seeking a comparable superintendent's job. (Appellant Cross-Appellee Addendum, 34-40; R. Doc. No. 191, at 1, 3, 5-7). The district court erred.

A victim of employment discrimination is presumptively entitled to full relief. *Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). Once a plaintiff has establishes the amount of damages she claims resulted from her employer's conduct, the burden shifts to the defendant to show that the plaintiff failed to mitigate damages. *Hutchinson*, 42 F.3d at 1044 (citing *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989)).

To establish the affirmative defense of a plaintiff's failure to mitigate damages, the defendants must show that the plaintiff failed to exercise reasonable diligence to mitigate her damages, and there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. *Hutchinson*, 42 F.3d at 1044

Appellate Case: 22-2067    Page: 50    Date Filed: 01/12/2023 Entry ID: 5235279

(citing *Gaddy*, 884 F.2d at 318). In this case, PCSSD did not establish the defense because it did not introduce any proof that Dr. Warren failed to exercise reasonable diligence to mitigate her damages, or that there was a reasonable likelihood that the she might have found comparable work by exercising reasonable diligence.

In the words of the district court, "…the trial record contains limited evidence on the issue of mitigation of damages…" (Appellee Cross-Appellant App 37; R. Doc. No. 207). That is putting is mildly. The entirety of the mitigation of damages "evidence" in this case consists of brief colloquy between PCSSD and Dr. Warren that began with PCSSD asking Dr. Warren, "…since [Charles] McNulty was hired at the conclusion of the search process, you haven't attempted to mitigate your damages by applying for other superintendent positions, have you?" (Trial Tr., vol. 5, at 1109). Dr. Warren replied, "I have not applied for any of the superintendent's positions." (Trial Tr., vol. 5, at 1109).

PCSSD then asked, "And you understand you have a legal obligation to mitigate your damage, correct?" (Trial Tr., vol. 5, at 1109). And Dr. Warren replied that she made a commitment to PCSSD to stay

Appellate Case: 22-2067    Page: 51    Date Filed: 01/12/2023 Entry ID: 5235279

with the district until it reached unitary status, that Ray & Associates contacted her about superintendent jobs in Wisconsin and Florida, but she did not pursue them because she moved to Little Rock to be near her grandchildren and had no plans on leaving the area. (Trial Tr., vol. 5, at 1109). PCSSD then asked was she aware that in 2021, the Conway School District had an opening for superintendent, she said she was aware, but that she did not seek that job because of her commitment to PCSSD. (Trial Tr., vol. 5, at 1110). She said she had no idea what the compensation package was for the superintendent of the Conway School District, and this concluded the mitigation of damages evidence. (Trial Tr., vol. 5, at 1109-1110).

PCSSD did not put any evidence in the record to establish one, that there was an actual opening for superintendent in the Conway School District, two, what the job of superintendent of the Conway School District paid, or three, that the job of superintendent of the Conway School District was comparable to the job of superintendent of the PCSSD. (Trial Tr., vol. 5, at 1109-1110).

PCSSD, not Dr. Warren bore the burden of introducing actual evidence – and a lawyer's questions are not evidence – that Dr. Warren

failed to exercise reasonable diligence to mitigate her damages, and there was a reasonable likelihood that she might have found comparable work by exercising reasonable diligence. *Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994) (citing *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989)).

PCSSD did not introduce any evidence that Dr. Warren acted unreasonably when she declined to leave her family and the only state where she has ever lived and worked to move to Wisconsin or Florida, nor did it introduce any evidence that any job in either or both of those states was comparable to the job of superintendent of PCSSD. PCSSD also failed to introduce any evidence that there actually was an opening for the job of superintendent of the Conway School District and that it was comparable to the job of superintendent of PCSSD. (Trial Tr., vol. 5, at 1109-1110). Because PCSSD failed to carry its burden of proof on its mitigation of damages defense, the district court committed reversible error when it denied her request for increased back pay, front pay, or first instatement relief. *Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).

45

46

## Conclusion

Dr. Warren engaged in protected activity when she reported PCSSD's violation of Judge Marshall's order and of Plan 2000's equal facilities mandate, and the district retaliated against her for doing so, therefore, this Court should deny PCSSD's motion for judgment as a matter of law and affirm the jury's retaliation verdict. *Sisco v. J.S. Alberici Constr. Co.*, 655 F.2d 146, 149-151 (8th Cir. 1981).

School board members who engage in blatant discrimination can be subjected to punitive damages in their individual capacities, therefore, this Court should deny PCSSD's motion for judgment as a matter of law and affirm the jury's punitive damages verdict. *Sanders v. Lee Cnty. Sch. Dist. No.1*, 669 F.3d 888, 894-895 (8th Cir. 2012).

And last, because PCSSD failed to carry its burden of proof on its mitigation of damages defense, the district court committed reversible error when it denied her request for increased back pay, front pay, or first instatement relief, therefore, this Court should grant Dr. Warren the relief the district court failed to grant her. *Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).

47

Respectfully submitted,

/s/Terrence Cain
Terrence Cain

**Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 9,590 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (16.0.13127.20502) 64-bit. The font size is 14. The font name is Equity A.

3. This brief complies with 8th Cir. R. 28A(h)(1) because it is a single document file. It complies with 8th Cir. R. 28A(h)(2) because it has been scanned for viruses, and it is virus free. It complies with 8th Cir. R. 28A(h)(3) because it is in Portable Document Format (also known as PDF or Acrobat Format) and was generated by printing to PDF from the original word processing file so that the text of the electronic version may be searched and copied.

<u>/s/Terrence Cain</u>
Terrence Cain

Attorney for the Appellee Cross-Appellant, Janice Hargrove Warren

Dated: January 11, 2023

Appellate Case: 22-2067     Page: 58     Date Filed: 01/12/2023 Entry ID: 5235279

## Certificate of Service*

I hereby certify that on January 11, 2023, I electronically filed this Appellee Cross-Appellant's Amended Brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

/s/Terrence Cain
Terrence Cain

---

* Once the Clerk of the Court notifies me that this brief has been approved, I will update this certificate to comply with Fed. R. App. P. 25(d)(1)(B) and Fed. R. App. P. 25(d)(2).

51