# No. 22-2067
# No. 22-2169

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

JANICE HARGROVE WARREN, *Plaintiff-Appellee-Cross-Appellant*

v.

MIKE KEMP, LINDA REMELE, SHELBY THOMAS, ALICIA GILLEN,
ELI KELLER, and BRIAN MAUNE, in their official capacities as members of the
board of the Pulaski County Special School District and in their individual
capacities, and PULASKI COUNTY SPECIAL SCHOOL DISTRICT,

*Defendants-Appellants-Cross-Appellees*

———————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS, CENTRAL DIVISION, No. 4:19-cv-00655-BSM
THE HONORABLE BRIAN S. MILLER, PRESIDING

———————————————————

## REPLY BRIEF OF APPELLANTS/CROSS-APPELLEES

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: _____/s/ W. Cody Kees_____
　　Jay Bequette, Ark. Bar #87012
　　W. Cody Kees, Ark. Bar #2012118

*Attorneys for Defendants-Appellants-Cross-Appellees*

# Table of Contents

Table of Authorities...............................................................................................ii

Reasons for Reversal........................................................................................... 1

Introduction.......................................................................................................... 2

Argument and Authorities .................................................................................. 4

A. Warren's conduct does not fall under Title VII's protections against
racial discrimination in the workplace............................................................. 4

    *(1)       Warren was acting within the scope and course of her
job duties as interim superintendent in opposing discrimination.* ............... 9

    *(2)       Warren failed to establish the other elements of her
retaliation claim.* .......................................................................................... 10

B. Warren cannot recover punitive damages against any defendant for
her retaliation claim. ........................................................................................ 12

    *(1)       Any punitive damages for retaliation under Title VII
must be reversed.*........................................................................................... 15

    *(2)       Any punitive damages for retaliation under section
1981 must be reversed.*.................................................................................. 15

    *(3)       Any punitive damages for retaliation under sections
1981 and 1983 must be reversed.* ................................................................. 16

C. The district court did not abuse its discretion by denying Warren's
request for additional back pay, front pay, or equitable relief. ...................... 18

    *(1)       Background* ................................................................... 19

    *(2)       Law on Mitigation of Damages*.................................... 21

    *(3)       Back Pay Discussion* ................................................... 23

    *(4)       Front Pay and Equitable Relief Discussion* ............... 24

Conclusion ......................................................................................................... 27

Certificate of Compliance ................................................................................. 29

Certificate of Service ........................................................................................ 30

Appellate Case: 22-2067    Page: 2    Date Filed: 02/24/2023   Entry ID: 5249052

# Table of Authorities

**Cases**

*Akpovi v. Douglas,* 43 F.4th 832 (8th Cir. 2022) ............................................. 19

*Artis v. Francis Howell N. Band Boosters Association*, 161 F.3d 1178 (8th Cir. 1998)................................................................................ passim

*Bonn v. City of Omaha*, 623 F.3d 587 (8th Cir. 2010). ............................... 4, 7, 8

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) ............................................. 2

*Brown v. Stites Concrete, Inc.*, 994 F.2d 553 (8th Cir. 1993) ........................ 23

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) ........................... 5

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) .............................. 3, 17

*Clark County School District v. Breeden*, 532 U.S. 268 (2001) ...................... 8

*Crowley v. Prince George's Cnty.*, 890 F.2d 683 (4th Cir. 1989) .................... 7

*Diamond v. Morris, Manning & Martin, LLP*, 457 F. App'x 844 (11th Cir. 2012) ............................................................................................ 5

*Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 798 (8th Cir. 2013) ........... 25

*Evans v. Kansas City School District*, 65 F.3d 98 (8th Cir. 1995)........... passim

*Excel Corp. v. Bosley* 165 F.3d 635 (8th Cir. 1999). ............................... 25, 26

*Ford Motor Co. v. EEOC*, 458 U.S. 219  (1982) ........................................... 23

*Franks v. Bowman Trans. Co.*, 424 U.S. 747 (1976)....................................... 8

*Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104 (8th Cir. 1994) ........ 22

*Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985) ........................................ 17

*Hartley v. Dillard's, Inc.*, 310 F.3d 1054 (8th Cir. 2002).......................... 19, 22

Appellate Case: 22-2067     Page: 3     Date Filed: 02/24/2023 Entry ID: 5249052

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ..................................... 16

*Johnson v. Ryder Truck Lines*, 575 F.2d 471 (4th Cir. 1978), *cert. denied*, 440 U.S. 979 (1979) ................................................................... 3

*Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368 (1st Cir. 2004) ......... 23

*Kentucky v. Graham*, 473 U.S. 159 (1985) .............................................. 15, 17

*Lamb-Bowman v. Del. State Univ.*, 39 F. Appx. 748 (3d Cir. 2002) ............... 7

*Lenhardt v. Basic Inst. of Tech.*, 55 F.3d 377 (8th Cir. 1995). ...................... 15

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545 (1990) ...................................... 22

*Moysis v. DTG Datanet*, 278 F.3d 819 (8th Cir. 2002) .................................. 26

*Newport v. Fact Concerts*, 453 U.S. 247 (1981) ........................................... 16

*Olivares v. Brentwood Indus.*, 822 F.3d 426 (8th Cir. 2016) ......................... 22

*Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012 (D.C. Cir. 1981) .................. 3

*Pollard v. E. I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) ................. 19

*Sanders v. Lee County School District No. 1*, 669 F.3d 888 (8th Cir. 2012), ........................................................................................... 16

*Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025 (8th Cir. 2013) ..................... 17

*Sellers v. Mineta*, 358 F.3d 1058 (8th Cir. 2004) .......................................... 24

*Smith v. Wade*, 461 U.S. 30 (1983) ............................................................... 17

*United States v. Smith*, 910 F.3d 1047 (8th Cir. 2018) .................................. 24

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) .................... 11, 22

*Williams v. King (In re King)*, 744 F.3d 565 (8th Cir. 2014) ......................... 19

**Statutes**

42 U.S.C. § 1981 ..................................................................................... 15, 16

Appellate Case: 22-2067     Page: 4     Date Filed: 02/24/2023 Entry ID: 5249052

42 U.S.C. § 1981a(b) ................................................................. 15

42 U.S.C. § 1983 ...................................................................... 16

42 U.S.C. § 2000e(b) ................................................................. 2

42 U.S.C. § 2000e-2 ................................................................... 2

42 U.S.C. § 2000e-3(a) ............................................................... 3

42 U.S.C. §1981a(b)(2) ............................................................. 19

**Rules**

Fed. R. Civ. P. 39(c)(2) ............................................................ 19

Fed. R. Civ. P. 59(e) ................................................................. 18

Fed. R. Civ. P. 60(b)(6) ............................................................ 18

Appellate Case: 22-2067    Page: 5    Date Filed: 02/24/2023 Entry ID: 5249052

**Reasons for Reversal**

Warren cannot rewrite Title VII to include challenged conduct that does not arise out of an *employment practice*. The words "employment practice" were intentionally included by Congress, and they define the zone of interest protected under the statute. That Warren reported a construction disparity between the Mills and Robinson facilities (which she perceived to be discriminatory) does not reasonably relate to an employment practice of the Pulaski County Special School District (PCSSD).

The Eighth Circuit's decisions in *Evans v. Kansas City School District*, 65 F.3d 98 (8th Cir. 1995), and *Artis v. Francis Howell N. Band Boosters Association*, 161 F.3d 1178 (8th Cir. 1998), require this Court to reverse. To affirm the judgment would necessarily overrule these two appellate decisions, which parties in this jurisdiction have relied on for nearly thirty years.

Because Warren failed to prove all elements for her retaliation claim, all damages awarded—including punitive damages—must be vacated. In any event, punitive damages are not recoverable in these circumstances. This Court should therefore reverse and dismiss.

Appellate Case: 22-2067    Page: 6    Date Filed: 02/24/2023 Entry ID: 5249052

## Introduction

In passing Title VII, Congress outlawed racial discrimination "*in the workplace.*" *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020) (emphasis added). Title VII's protections do not extend to all relationships—only to certain employer-employee ones. *See id.*[1] "Title VII is not a bad acts statute." *Evans v. Kan. City Sch. Dist.*, 65 F.3d 98, 101 (8th Cir. 1995) (internal citations and quotations omitted). As established in the district's opening brief, Title VII protects only against unlawful employment practices.

Title VII's protections extend to discrimination against any individual "with respect to his compensation, terms, conditions, or privileges of employment[.]" 42 U.S.C. § 2000e-2(a)(1). Under Title VII, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). The statute therefore requires a plaintiff to establish (1) an employment practice (2) motivated at least in part by (3) a prohibited factor.

Title VII's antiretaliation provision enforces its antidiscrimination protections against unlawful employment practices. Title VII's antiretaliation

_____

[1] 42 U.S.C. § 2000e(b)–(e)

provision prohibits an employer from discriminating against an employee because she has either (1) "opposed any practice made an unlawful employment practice" by Title VII; or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). These two clauses are known as the "opposition" clause and the "participation" clause, respectively.[2]

In short, Title VII does not protect against all retaliatory conduct but only against retaliation for conduct that qualifies as a protected act. The "protected act" standard under section 1981 is the same. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008). Federal courts have generally held that section 1981 imposes no greater burden on employers than Title VII does. *E.g., Johnson v. Ryder Truck Lines*, 575 F.2d 471 (4th Cir. 1978), *cert. denied*, 440 U.S. 979 (1979).

---

[2] Federal courts generally apply a tighter requirement to Title VII retaliation claims under the opposition clause. The courts reason that Congress did not write the opposition clause to hold as much protection as the participation clause. *See, e.g., Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981).

Appellate Case: 22-2067     Page: 8     Date Filed: 02/24/2023 Entry ID: 5249052

## Argument and Authorities

### A. Warren's conduct does not fall under Title VII's protections against racial discrimination in the workplace.

The district agrees with Warren that a plaintiff need not prove that the underlying employment practice by the employer was, in fact, unlawful. An employee is protected if she opposes an employment practice that she reasonably and in good faith believes to be unlawful. *Bonn v. City of Omaha*, 623 F.3d 587, 591 (8th Cir. 2010). Federal law simply requires that an employee have a reasonable belief that the challenged employment practice amounts to unlawful discrimination. *Id*.

The district, however, disagrees with Warren's assertion that "every federal circuit, including this one, that has considered the issue has concluded that opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated." Appellee/Cross-Appellant's Brief at 28. Warren contends that even if she "was mistaken in her belief that reporting the racially discriminatory differences between Mills and Robinson was not a report about an unlawful employment practice, that does not doom her retaliation claim." Appellee/Cross-Appellant's Brief at 27–28. The district cannot agree with Warren's erroneous interpretation of federal law.

At its core, the legal standard for retaliation is an objective standard, not a subjective one. Title VII's antiretaliation provision uses an objective standard

4

of a reasonable employee. The Supreme Court has said, "An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 56 (2006). The reasonableness of a plaintiff's mistaken-but-good-faith belief is informed by Title VII case law. *See, e.g.*, *Diamond v. Morris, Manning & Martin, LLP*, 457 F. App'x 844, 846 (11th Cir. 2012) (stating that the reasonableness of a plaintiff's belief that her employer engaged in an unlawful employment practice must be measured against existing substantive law.).

This Court's Title VII case law establishes that Warren's belief was objectively unreasonable. In *Evans v. Kansas City School District*, this Court did not protect a school employee from retaliation under Title VII when he complained of discrimination against persons who were served by or otherwise connected with the school. 65 F.3d 98 (8th Cir. 1995). This Court instead held that it was not reasonable for a school employee to believe that Title VII forbids discrimination against nonemployees. *Id*. at 100–01. In reaching this result, this Court reasoned that a disregard of a federal desegregation order concerning a school program did not relate to an employment practice of the district. *See id*.

Appellate Case: 22-2067    Page: 10    Date Filed: 02/24/2023 Entry ID: 5249052

Respectfully, *Evans* does all the work the district says it does. *Evans* arose from allegations of racial discrimination and unlawful retaliation by a school district against a school employee in violation of Title VII and section 1981 just like this case. Just as in *Evans*, the challenger here (Warren) was a school employee complaining about a school district's failure to comply with a federal district court's desegregation order. *Id*. at 101. Just as in *Evans*, this Court must affirm because the plaintiff's opposition did not involve any kind of employment practice.

Three years after *Evans*, this Court again expressly reaffirmed that a challenge under Title VII's antiretaliation provisions must be objectively reasonable and related to an employer's employment practice. In *Artis v. Francis Howell N. Band Boosters Association*, 161 F.3d 1178 (8th Cir. 1998), this Court ruled that a plaintiff's opposition must relate to the terms and conditions of his or her employment. In *Artis*, the plaintiff argued, unsuccessfully, that he was fired from the position of marching band director in retaliation for complaining about the disparate treatment of black and white students in the school district. This Court held that Artis's retaliation claim based on racial discrimination toward students did not meet the definition of a protected act because "opposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII." *Id*. at 1183. Just like in

6

*Artis*, Warren's opposition to racial discrimination is "outside the ambit of an employment practice."

It is not just the Eighth Circuit that has taken this legal position for decades. Sister circuits have also agreed that Title VII only protects employees or prospective employees from unlawful employment practices. Title VII's protections, including its antiretaliation provisions, do not extend beyond the bounds of an "employment practice." For example, the Third Circuit rejected a women's basketball coach's claim for retaliation as a matter of law, when she alleged that the school acted inequitably against female athletes, because her report did not relate to an employment practice. *Lamb-Bowman v. Del. State Univ.*, 39 F. Appx. 748, 750-51 (3d Cir. 2002). The Fourth Circuit held that investigating racial harassment of citizens by police officers did not involve an employment practice when the discrimination was reported by a former police officer. *Crowley v. Prince George's Cnty*., 890 F.2d 683, 687 (4th Cir. 1989) (rejecting former police officer's Title VII retaliation claim); *see also Bonn*, *supra* (similar facts). The Eleventh Circuit dismissed a university professor's Title VII retaliation claim when he was fired after advocating for a female student's civil rights because advocating for students' civil rights was not a protected act relating to an employment practice under Title VII.

7

The Eighth Circuit's analysis of Title VII's antiretaliation provision in *Evans* and *Artis* is consistent with the Supreme Court's interpretation. "[I]n enacting Title VII of the Civil Rights Act of 1964, Congress intended to prohibit all *practices* in whatever form which create inequality in *employment opportunity* due to discrimination[.]" *Franks v. Bowman Trans. Co.*, 424 U.S. 747, 763 (1976) (emphasis added). In *Clark County School District v. Breeden*, 532 U.S. 268 (2001) (per curiam), the Supreme Court ruled that a plaintiff's retaliation claim failed as a matter of law because she lacked a "reasonable good faith belief" that the discriminatory conduct she opposed met Title VII's requirements.

Just as the Supreme Court did in *Breeden*, this Court must reverse because Warren's Title VII retaliation claim based on these established facts of record falls well short of what existing precedent requires. Here, Warren misses the mark because under Title VII a plaintiff's good-faith belief, no matter how dearly held, must be both objectively reasonable and related to her employer's employment practice. *Bonn*, *supra*. It was not reasonable for Warren to believe that discrimination in school structures affecting students could violate her Title VII rights as an employee given *Evans* and *Artis*. Like in *Breeden*, no reasonable person could have believed that Warren's report of the construction disparity in the school facilities violated Title VII's standard. Warren's reliance

8

on what she describes as "a good faith but ultimately mistaken belief" is not objectively reasonable given this Court's Title VII case law. Warren's opposition was not to an employment practice.

### (1) Warren was acting within the scope and course of her job duties as interim superintendent in opposing discrimination.

Warren attempts to salvage her case from Title VII's "employment practice" requirement by arguing that she had an affirmative duty to make sure that the district fully complied with the ongoing desegregation orders, including the court-ordered requirement that it equalize new school facilities. Cross-Appellant-Appellee Brief at 26. She argues that ensuring facility equality was "clearly a term and condition of her employment as [interim] superintendent" so she has met Title VII's "employment practice" requirement. Cross-Appellant-Appellee Brief at 27.

Even assuming (for the sake of argument) that the disparities in the PCSSD facilities were motivated wholly by racial bias, Warren's retaliation claim is still not actionable. The district agrees that Warren's reporting to the school board about racial discrimination in the building and budgets of the Mills and Robinson facilities was her "doing her job" and doing it well. It is precisely because dealing with parent complaints, reporting about racial

9

discrimination, and monitoring school facilities were included in Warren's job duties that her retaliation claim necessarily fails.

An employee investigating and reporting racial discrimination as part and parcel of his or her job is not engaged in a protected act. *See* Appellant's Brief, at 33–36. Warren was simply performing her assigned job to manage an internal investigation into racial discrimination by her employer. Retaliation based on Warren's internal reporting is not actionable because reporting about discrimination and school facilities formed part of Warren's ongoing duties.

### *(2) Warren failed to establish the other elements of her retaliation claim.*

Even if you agree with Warren that her opposition to what she believed to be discrimination falls within the ambit of an "employment practice," her case still falls short of the law's requirements. Cross-Appellant-Appellee's brief is tellingly silent on the remaining two legal requirements that Warren must prove.

First, Warren must establish that she suffered an adverse employment action when she did not receive a second and "final" interview and was not hired for the permanent superintendent position. This Court must decide whether this "failure to interview" constitutes adverse employment action for the purposes of Title VII retaliation. As argued in the district's opening brief, this Court has never ruled that denying a job candidate a finalist slot qualifies

as a materially adverse employment action. *See* Appellant's brief at 37–40. The record is bereft of evidence that Warren was denied a promotion or received a reduction of pay, a demotion, a bad evaluation, or suffered any other adverse consequences.

Second, Warren must establish that her report to the board about racial discrimination in the construction of the school facilities was the reason why she not hired in the final round of interviews. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013) (Title VII retaliation claims must be proved according to traditional principles of but-for causation).

The record shows that there was a lapse of approximately eight months between Warren's initial report to the board and the final round of interviews, which cuts heavily against a connection between the two events. Moreover, Warren misrepresented to the board's attorney that the board had approved a supplemental status report when it had not, which caused some legitimate concerns with her performance and communication skills. There were other reasons, too. Nonetheless, Warren was selected to advance to the semifinal round of interviews eight months later. Moreover, the interview process was led by a disinterested party using a nondiscriminatory procedure. Given the highly qualified and diverse pool of applicants from across the country, Warren cannot establish that the board's decision to interview three other finalists and

11

hire McNulty instead of her for the superintendent permanent position was retaliatory in nature. On this record, she cannot show that her report to the board about racial discrimination in construction of the school facilities was the reason why she was not interviewed in the final round and ultimately not hired for the permanent position. *See also* Appellants' Brief at 40–46.

**B. Warren cannot recover punitive damages against any defendant for her retaliation claim.**

Warren's appellee's brief makes an assumption, which is that the $50,000 in punitive damages assessed against PCSSD school board members Linda Remele and Alicia Gillen were damages assessed against these women in their individual capacities. The judgment, however, does not specify whether punitive damages were assessed against Remele and Gillen in their official or individual capacities. The judgment states, "Punitive damages are assessed against defendant Linda Remele in the amount of $25,000, and against defendant Alicia Gillen in the amount of $25,000." App. 1015; R. Doc. 176.

Warren sued Remele and Gillen in both their official and individual capacities and requested an award of punitive damages against these defendants in both their individual and official capacities. App. 577; R. Doc. 65, at 26. The operative complaint contained two claims for retaliation in the action: (1) one count of retaliation under Title VII; and (2) one count of retaliation

12

under 42 U.S.C. §§ 1981 and 1983. App. 556, 570–81; R. Doc. 65, at 15, 19–20.

Warren, however, neither submitted nor proffered a retaliation jury instruction under 42 U.S.C. § 1983. Warren instead proffered jury instructions on punitive damages arising from Title VII and section 1981 claims for retaliation. *See* R. Doc. 168, at 28–33, 42–49.

Two factual claims for retaliation were submitted to the jury for decision: (1) a retaliation claim "for not being interviewed or hired for the position of superintendent"; and (2) a retaliation claim "for not being hired for the position of deputy superintendent[.]" App. 999–1002; R. Doc. 171, at 5–8. The jury found liability only on the first count of retaliation—for Warren's not being interviewed or hired for the position of superintendent. *Id*.

It is not clear whether liability for the "no-interview-or-hire" retaliation claim was invoked under Title VII or section 1981. Warren's Title VII and section 1981 retaliation claims—inclusive of her request for punitive damages—were combined on the verdict form. *See* App. 999-1000; R. Doc. 171, at 5–6. Over the defendants' objection, the trial court told the jury that it could assess punitive damages against "any or all" defendants. App. 988-99; R. Doc. 170, at 24–25.

Appellate Case: 22-2067     Page: 18     Date Filed: 02/24/2023 Entry ID: 5249052

But the law does not allow a jury to assess punitive damages against any defendant under either Title VII or section 1981. After the jury's verdict was returned, the district court dismissed $273,000 in punitive damages "against PCSSD," which Warren has not appealed. App. 1013; R. Doc. 175, at 1. The court, however, allowed a $50,000 punitive award to stand against Remele and Gillen without identifying in what capacity they would have to pay. App. 1015; R. Doc. 176. Before, during, and after the trial the defendants strenuously objected to punitive damages being awarded under Title VII or section 1981 and against the defendants in either their official or individual capacities.

Because an ambiguity exists on whether the punitive damages were assessed against Remele and Gillen in their individual or official capacities, this Court should apply the presumption that the punitive damages are against Remele and Gillen in their official capacities only. *See Artis v. Francis Howell N. Band Boosters Association*, 161 F.3d 1178, 1182 (8th Cir. 1998) (stating that if the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity). Because the judgment does not specifically name the defendants in their individual capacities, we should presume that the judgment is against the defendants in their official capacities. Out of an abundance of caution, counsel addresses punitive damages in both defendants' official and individual capacities below.

### (1) Any punitive damages for retaliation under Title VII must be reversed.

As established in Appellant's opening brief, the punitive damages awarded under Title VII cannot stand. To the extent the damages were assessed against Remele and Gillen in their official capacities, they must be reversed for the same reason that the district court reversed the punitive damages against PCSSD. *See* App. 1013-14; R. Doc. 175, at 1-2. A claim against a state or municipal official in her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A plaintiff cannot recover punitive damages against a school board under Title VII. *See* 42 U.S.C. § 1981a(b).

To the extent the punitive damages were assessed under Title VII against Remele and Gillen in their individual capacities, they must also be reversed. A jury cannot impose liability on an individual under Title VII. *Lenhardt v. Basic Inst. of Tech.*, 55 F.3d 377 (8th Cir. 1995).

### (2) Any punitive damages for retaliation under section 1981 must be reversed.

To the extent the jury was instructed on a retaliation claim under 42 U.S.C. § 1981, which is what Warren had requested, the $50,000 in punitive damages assessed against Remele and Gillen must be reversed. There is no implied private right of action for damages against state actors under 42 U.S.C.

15

§ 1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). Instead, persons alleging violations by state actors of the rights guaranteed by section 1981 must pursue a remedy under 42 U.S.C. § 1983. *Id.* Remele and Gillen were acting under color of state law, so Warren cannot recover any punitive damages against them under section 1981.

### (3) *Any punitive damages for retaliation under sections 1981 and 1983 must be reversed.*

Section 1983 is the exclusive source for federal damages actions against state actors alleged to have violated section 1981. To the extent that the jury awarded punitive damages against Remele and Gillen in their official capacities, they are statutorily immune. *See Newport v. Fact Concerts*, 453 U.S. 247 (1981). It is clear error to allow a punitive award to stand against Remele and Gillen in their official capacities under section 1983. *See id*.

To the extent that punitive damages were entered against Remele and Gillen in their individual capacities under section 1983, this Court must reverse.

Warren relies on *Sanders v. Lee County School District No. 1*, 669 F.3d 888 (8th Cir. 2012), to establish that a right to be free from retaliation exists under section 1981 and is enforceable under section 1983, but *Sanders* is not a retaliation case. *See* Appellee-Cross-Appellant's Brief at 36–41. And Warren did not request relief under section 1983 from the district court at trial when the jury was instructed.

16

Unlike Title VII, section 1981 does not contain a specific statutory provision prohibiting retaliation. But the Supreme Court has held that retaliation claims are cognizable under section 1981 even without any specific statutory language. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008). As established earlier, this Court has held that the elements for retaliation claims under section 1981 and Title VII are the same, *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013), and a section 1981 retaliation claim may be enforceable under section 1983 in the right circumstances. *See Greenwood v. Ross*, 778 F.2d 448, 449 (8th Cir. 1985).

But these are not the right circumstances. There is no proof of record that Remele and Gillen acted outside of their official roles and job duties as board members. To establish personal liability in a section 1983 action, an official, acting under color of state law, must have caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159 (1985). Additionally, a plaintiff may recover punitive damages against an official in her personal capacity *only if* the official acted with malicious or evil intent or in callous disregard of the plaintiff's federally protected right. *Smith v. Wade*, 461 U.S. 30 (1983). A finding of retaliation alone is insufficient to support the jury's award of punitive damages.

17

Here, there was absolutely no evidence presented at trial that Remele's or Gillen's conduct satisfied the legal standard for an award of punitive damages. A reasonable juror could not conclude that these women acted with malicious or evil intent or with a callous disregard. Nothing in the record touched on Remele's or Gillen's intentions to violate federal rights. In fact, the record shows the opposite—that they diligently worked to correct any racial inequalities in the school facilities that Warren reported.

Moreover, there is no proof that Remele or Gillen personally caused a deprivation of Warren's rights. Warren argued that Remele and Gillen intentionally scored her lower in the semifinal round of interviews so that she would not score in the top three candidates, but there was no proof of this in the record; her conclusion is pure conjecture. In the absence of any evidence regarding malice or reckless disregard of Warren's protected rights, this Court cannot agree that a jury's speculation can sustain an award of punitive damages. For these reasons and all reasons argued in the opening brief, any punitive damages assessed against Remele and Gillen individually under sections 1981 and 1983 must be reversed.

## C. The district court did not abuse its discretion by denying Warren's request for additional back pay, front pay, or equitable relief.

Warren presents a single issue on cross-appeal. She argues that the district court erred when it denied her Rule 59(e) and 60(b)(6) request to

18

increase her back pay award, "reinstate" her as superintendent, or give her front

pay. This Court reviews the district court's denial of a motion to alter or amend

filed under Rule 59(e) or Rule 60(b) for abuse of discretion. *Akpovi v. Douglas,*

43 F.4th 832 (8th Cir. 2022) (Rule 59(e)); *Williams v. King (In re King)*, 744

F.3d 565 (8th Cir. 2014) (Rule 60(b)). The district court did not abuse its

discretion, and this Court should wholly affirm its decision to deny Warren

additional backpay, equitable relief, or front pay damages.

### *(1)    Background*

There is no right to a jury trial on a back pay claim, *Pollard v. E. I. du*

*Pont de Nemours & Co*., 532 U.S. 843 (2001), but in this case the parties agreed

to a jury determination on back pay. *See* Fed. R. Civ. P. 39(c)(2); 42 U.S.C.

§1981a(b)(2). The jury awarded $208,025.40 in back pay to Warren after it

found that PCSSD had unlawfully retaliated against her.

The formula for back pay is "the difference between the value of

compensation the plaintiff would have been entitled to had he remained

employed by the defendant and whatever wages he earned during the relevant

period." *Hartley v. Dillard's, Inc*., 310 F.3d 1054, 1062 (8th Cir. 2002). The

district court essentially instructed the jury how to calculate back pay using this

formula. *See* App. 986; R. Doc. 170, at 22.

19

The district court also instructed the jury about Warren's legal duty to mitigate her damages:

> You are instructed that Janice Warren has a duty under the law to mitigate her damages. That means she must exercise reasonable diligence under the circumstances to minimize her damages. If you find that she has failed to seek out or take advantage of an opportunity that was reasonably available to her, you must reduce her damages by the amount she reasonably could have avoided if she had sought out or taken advantage of such an opportunity.

App. 986-87; R. Doc 170, at 22–23.

At trial, Warren specifically asked the jury to award her $437,453 in back pay, stating that this number was "simply a deduction between Dr. McNulty's salary and benefits minus Dr. Warren's salary and benefits as assistant superintendent for equity and pupil services." TR., Vol. 6, p. 1276. The jury, however, awarded less than the $437,453 Warren requested. The record reflects that the jury considered and assessed back pay damages for Warren's retaliation claim separately from general compensatory damages or punitive damages. The verdict form states: "We find Janice Warren's lost wages and benefits through the date of this verdict to be: $208,025.40[.]" *See* App. 999; R. Doc. 171, at 5.

Warren argues here, as she did in the trial court, that the jury erred in reducing the amount of back pay she requested and not giving her front pay "because PCSSD failed to introduce any evidence that [she] unreasonably

failed to mitigate her damages." Cross-Appellant-Appellee's Brief at 41. The district court rejected this argument and ruled that

> Warren's back pay award will not be increased because the jury heard evidence that Warren failed to fully mitigate her damages by seeking comparable employment. *See Fiedler v. Indianhead Truck Line, Inc*., 670 F.2d 806, 809 (8th Cir. 1982). Based on the evidence, the jury found that Warren was not entitled to lost wages and benefits for the entire time period she was seeking, and this finding cannot be freely disregarded. *See Mathieu v. Gopher News Co*., 273 F.3d 769, 778 (8th Cir. 2001) ("the district court is not free to reject or contradict findings by the jury that were properly submitted to the jury").

App. 1065; R. Doc. 191, at 3.

Ultimately, the district court concluded:

> Janice Warren's motion for reconsideration [Doc. Nos. 192 & 195] is denied. While the trial record contains limited evidence on the issue of mitigation of damages, Warren testified at trial that she did not apply for any other superintendent positions, including an open position at the nearby Conway School District. Warren Test. at 86–87, Doc. No. 194-2. Warren also testified that she was personally committed to remaining at the Pulaski County Special School District. *Id*. This evidence was sufficient for the jury to find that Warren did not "exercise reasonable diligence under the circumstances to minimize her damages." Court's Jury Instructions at 22, Doc. No. 170. I decline to award Warren additional back pay, or front pay, because it would contradict this permissible finding by the jury.

Appellee Cross-Appellant App. 37; R. Doc. 207, at 1.

### *(2)* *Law on Mitigation of Damages*

Under the Seventh Amendment, a district court is bound by the jury's decision on all issues common to the requests for legal and equitable relief.

21

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550–54 (1990). Although reinstatement and front pay are for the court to determine, *Nassar v. Jackson*, 779 F.3d 547, 553 (8th Cir. 2015), the court is bound by the jury's findings on issues that were properly submitted to it and may not reject or contradict those findings in making a determination as to reinstatement or front pay. *Olivares v. Brentwood Indus.*, 822 F.3d 426, 430 (8th Cir. 2016).

A party harmed by discriminatory employment decisions has an affirmative duty to mitigate her damages by reasonably seeking and accepting other substantially equivalent employment. *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002). A plaintiff does not have to go into another line of work, accept a demotion, or take a demeaning position. *Id*. A plaintiff's efforts to mitigate do not have to be successful, but she must show an honest effort "to find substantially equivalent work." *Id*.

An award of back pay is intended to put the plaintiff in the position she would have been in but for her employer's unlawful actions. *See Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1111 (8th Cir. 1994). Front pay is calculated to begin at the date the verdict is entered. *Olivares v. Brentwood Indus.*, 822 F.3d 426, 430 (8th Cir. 2016).

When a plaintiff is unavailable to work for reasons not attributable to the defendant's conduct—including personal reasons—she is generally not entitled

22

to collect back pay for the time period in which she was unavailable for equivalent work. *See Johnson v. Spencer Press of Maine, Inc*., 364 F.3d 368, 383 (1st Cir. 2004). The duty of a successful Title VII plaintiff to mitigate damages is not met by using reasonable diligence to obtain any employment. Rather, the plaintiff must use reasonable diligence to obtain *substantially equivalent* employment. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32 (1982) (overruled by statute on other grounds). The burden remains on the employer to show that the employee failed to mitigate her damages. *See Brown v. Stites Concrete, Inc*., 994 F.2d 553, 565 (8th Cir. 1993).

### *(3)    Back Pay Discussion*

Assuming but not agreeing that the board's decision to not interview Warren as a finalist for the permanent superintendent position was an adverse employment action arising from Warren's protected act, there is nonetheless sufficient evidence in the record to conclude that she failed to fully mitigate her back-pay damages. Warren failed to seek out or take advantage of opportunities that were reasonably available to her, and she did not seek substantially equivalent employment for personal reasons.

The trial testimony was that Ray and Associates had reached out to Warren about open superintendent positions in Wisconsin, Florida, and one other place. TR. Vol. 4, p. 1109. Warren, however, did not consider these out-

23

of-state positions because she wanted to stay in the Central Arkansas area and be close to her grandchildren. TR. Vol. 4, p. 1109. In fact, Warren admitted that she had not applied for any superintendent position in the four years from when the district hired McNulty to the time of trial—including an open superintendent position in Conway. TR. Vol. 4, p. 1110.

The back-pay amount awarded ($208,025.40) was neither so imprecise nor so speculative as to render equitable relief incomplete. The jury was instructed that if Warren failed to mitigate her damages, then the jury should reduce the amount of her back pay commensurately. *See* App. 986-87; R. Doc 170, at 23–24. Handed these instructions, the jury awarded Warren less than half the full amount of her back-pay request. Juries are presumed to follow their instructions. *United States v. Smith*, 910 F.3d 1047, 1053 (8th Cir. 2018). Consequently, the jury must have found that Warren did not meet her duty to mitigate her damages up to the date of the verdict. The district court was not free to disregard this finding. *Olivares*, *supra*.

### (4) *Front Pay and Equitable Relief Discussion*

Warren is not entitled to reinstatement or other equitable relief. *See Sellers v. Mineta*, 358 F.3d 1058, 1063 (8th Cir. 2004). The parties agreed that reinstatement is "impracticable and/or impossible." *See* Appellee Cross-Appellant App. 24; R. Doc. 180, at 20.

Warren asked that her future earnings from the time of verdict through the next two years (until her retirement) be set at the same level as McNulty's. *See, e.g.*, Appellee Cross-Appellant App. 24; R. Doc. 180, at 20. The district court denied her front pay for the following reason.

> The jury concluded that Warren was not entitled to lost wages and benefits through the date of verdict, which is when front pay begins to be calculated. A front pay award would contradict this finding by the jury. *See Mathieu*, 273 F.3d at 778; *see also Excel Corp. v. Bosley*, 165 F.3d 635, 639 (8th Cir. 1999) (denying front pay based on plaintiff's failure to mitigate by finding comparable employment).

App. 1067; R. Doc. 191, at 5.

The district court did not abuse its discretion. Awards of front pay are a disfavored remedy and are always at least partially speculative as they necessarily rest upon predictions and assumptions about a plaintiff's longevity, the likely duration of any future employment, the continued viability of the employer, ongoing efforts at mitigation, and "countless other factors." *Dollar v. Smithway Motor Xpress, Inc*., 710 F.3d 798, 809 (8th Cir. 2013).

In *Excel Corporation v. Bosley,* this Court said that "while the district court is not free to reject the jury's findings, the determination of front pay should be made after considering all of the circumstances regarding the claimant's employment situation that are relevant to the issue of front pay." *Excel Corp. v. Bosley* 165 F.3d 635, 640 (8th Cir. 1999). In light of the

scantiness of evidence on the plaintiff's efforts to find additional work and the amount of time that had passed since the verdict, this Court affirmed the district court's denial of front pay in *Bosley*. *Id*. at 639–40. This Court reasoned that district courts are bound by the jury's findings and simply held that, in light of the circumstances existing at the time of the front-pay determination, it was not an abuse of discretion for the district court to deny front pay.

The same result should issue here.

The jury's back-pay award in this case is sufficient by itself to compensate Warren for lost wages and benefits. *See, e.g.*, *Moysis v. DTG Datanet*, 278 F.3d 819, 829 (8th Cir. 2002) (affirming the denial of front pay in light of the plaintiff's current employment and back-pay and compensatory awards). Warren has presented no postverdict proof that she has made efforts to obtain a permanent superintendent role. She has continued to work as an assistant superintendent for PCSSD before, during, and after the jury trial. The district court had nothing from which to conclude that Warren had a basis for future expected earnings at a superintendent's salary. Also, there was no testimony on Warren's life expectancy or the length of time it would take her to secure comparable employment. Awarding front pay in this case would require too much conjecture and speculation. Considering all factors, the district court did not abuse its discretion in declining to award front pay.

26

## Conclusion

Warren's opposition to discrimination in the construction of school facilities did not relate to an employment practice of the district so it is not remediable under Title VII. Title VII does not protect against all retaliatory conduct or bad acts. Warren's belief that she was engaging in a protected act by doing her job as interim superintendent is objectively unreasonable given this Court's Title VII case law. To affirm this case would necessarily require this Court to overrule existing Title VII case law—specifically *Evans* and *Artis*—which parties have relied on for nearly thirty years.

This Court must reverse any punitive damages under Title VII and section 1981. To the extent the damages were awarded under sections 1981 and 1983, there is insufficient evidence to support them under the governing legal standard. A finding of retaliation alone is insufficient to support the jury's award of punitive damages.

For all the reasons argued in the briefs, the Court must reverse and dismiss Warren's claims with prejudice.

27

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: _____**/s/ W. Cody Kees**_____
    Jay Bequette, Ark. Bar #87012
    W. Cody Kees, Ark. Bar #2012118

*Attorneys for Appellants*

28

## Certificate of Compliance

I hereby certify that the following statements are true:

1. This brief complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(i). It contains about 7,193 words, excluding the parts of the brief exempted by Federal Rule 32(f).

2. This brief complies with the typeface and typestyle requirements of Federal Rule 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Microsoft Office 365 Word in 14-point Times New Roman font.

3. This brief complies with the electronic filing requirements of Eighth Circuit Rule 28A(h). The electronic version of this brief has been scanned for viruses and is virus free.

**/s/ W. Cody Kees**

Attorney for Defendants-Appellants
Dated: February 24, 2023

Appellate Case: 22-2067    Page: 34    Date Filed: 02/24/2023 Entry ID: 5249052

## Certificate of Service

I certify that on the date indicated below, I filed the foregoing document with the clerk of the court, using the CM/ECF system, which will automatically send notification and a copy of the brief to the counsel of record for the parties. I further certify that all parties to this case are represented by counsel of record who are CM/ECF participants. A paper copy of the brief will be filed on opposing counsel within five days after the electronic version of the brief is approved for filing. *See* 8th Cir. R. 28A(d).

       **/s/ W. Cody Kees**
Attorney for Defendants-Appellants
Dated: February 24, 2023

Appellate Case: 22-2067   Page: 35   Date Filed: 02/24/2023 Entry ID: 5249052